E-FILED
Monday, 22 June, 2026 04:56:48 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MILES DENNIS and JAYDEN DENNIS, ) | |
| ) | |
|   Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 26-CV-3060 |
| ) | |
| BRENDAN KELLY, in his official capacity ) | |
| as Director of the Illinois States Police, ) | |
| ) | |
|   Defendant. ) | |

## MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR FOR SUMMARY JUDGEMNT

Comes now Plaintiffs Miles and Jayden Dennis, by and through their attorneys, Thomas G. Maag, and the Maag Law Firm, LLC, and moves for a temporary restraining order and/or an order of summary judgment.

## INTRODUCTION

Plaintiffs Miles and Jayden Dennis are 18 year old twins. (Ex. A, para. 1, 2). On February 15, 2026, they both went online, and applied for Firearms Owners Identification Cards, colloquially called FOID. As is well known, under Illinois law, in order to lawfully possess firearms, even in the home for private self defense, one must generally possess a valid FOID card. There are no obvious or known exceptions for this for Plaintiffs.

Generally speaking, the FOID process is a shall issue regime, unless of course the applicants are under 21, and then, all of the sudden issuance becomes defendant on the existence and goodwill of a parent or guardian[1]. While, in total candor, the entire FOID regime is likely

---

[1] Of course, by definition, no mentally competent 18, 19 or 20 year old actually has a guardian, it unclear how this could actually apply in practice, unless what is meant is a *former* guardian.

unconstitutional, that is beyond the scope of this case, and no challenge is made to FOID cards as they exist for persons 21 years of age or older[2].  Likewise, no challenge is being made as to any regulation for persons under the age of 18, as Plaintiffs lack standing to challenge any FOID regulation for persons *under* 18 years of age[3].  Those issues will have to wait for another case.

For persons, like Plaintiffs herein, who are over 18, but under 21, they are treated "special" under Illinois law, and not special in a good way.  Under Illinois law, persons like Plaintiffs have to convince their parents or guardian, who themselves in turn must be eligible for a FOID card, to sign an affidavit.

While, *allegedly,* an administrative appeal is permissible, and Plaintiffs expect Defendant to argue same,

> (1) under *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496 (1982), exhaustion of administrative remedies is not required in 42 USC 1982 cases, and
>
> (2) there is no evidence that any one has *ever* actually obtained a FOID card as an 18 to 20 year old by appealing without such an affidavit, and
>
> (3) this is the same mechanism used to restore the rights of *inter alia* convicted felons and those adjudicated with serious mental disorders.

Said affidavit is *mandatory*, and the computer will not event accept the application without it.  (Ex A, para. 4, 5, see also attached to Ex. A, p. 3, 4).  If an appeal where to take

---

[2] It is the earnest hope that this Court and any reviewing Courts promptly rule on this case, one way or the other, so as to avoid the easy disposition of waiting under Plaintiff's turn 21 and declaring the case moot.  As this case was filed when Plaintiffs turned 18, the Court system is being afforded the maximum possible opportunity time wise to rule on this case and issue.

[3] The undersigned attorney had a FOID card at 12 years of age, and is aware of FOID cards having been issued to literal babies in diapers.

place[4], per 430 ILCS 65/10(f), the matter is referred to as in all applications enabling firearm possession, in the first instance, to the investigatory and administrative authority of the Department of State Police, and thereafter, if necessary, to the circuit court for judicial review. *Coram v State,* 2013 IL 113867 Para. 42.  The standard for relief to be granted throughout Illinois' FOID Card Act, whether "the person will not be likely to act in a manner dangerous to public safety and granting relief would not be contrary to the public interest.  Id.  As noted by the Illinois Supreme Court, this is the same *standard* used to *restore* firearms rights of felons and those mentally ill.  *Coram*, Para. 47.

Thus, if nothing else, it is clear that 18 to 20 year olds are being treated differently than 21 year olds as relates to FOID cards and firearms.

As a practical matter, absent a willing parent, an 18, 19 or 20 year old in Illinois is either totally barred from firearms possession, or arguably, is treated the same as a convicted felon or adjudicated insane person, even with a completely spotless record.

**STANDARDS FOR PRELIMINARY INUNCITONS AND SUMMARY JUDGMENT**

**Preliminary Injunctions**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). When evaluating a preliminary injunction decision, "[w]e review the district court's findings of fact for clear error, its legal conclusions de novo, and its balancing of the factors for a preliminary injunction for abuse of discretion." *D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir.

---

[4] An administrative appeal is not necessary in federal civil rights act cases brought under 42 USC 1983, like this one.  See *Vogelpohl v. Hacker*, 2023 IL App (5th) 220658-U *citing Patsy v. Board of Regents of State of Florida*, 457 U.S. 496 (1982).

2016). An error of law can cause an abuse of discretion. *Common Cause Indiana v. Lawson*, 978 F.3d 1036, 1039 (7th Cir. 2020).

To secure a preliminary injunction, Plaintiffs "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20, 129 S.Ct. 365. The first step in the analysis requires a plaintiff to "demonstrate that [his] claim has some likelihood of success on the merits, not merely a better than negligible chance." Mays v. Dart, 974 F.3d 810, 822 (7th Cir. 2020) (internal citation and quotation marks omitted).

**Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court construes all facts and draw all reasonable inferences in the nonmoving party's favor, but the moving party may prevail "by showing an absence of evidence to support" the nonmoving party's claims. *Tyburski v. City of Chicago,* 964 F.3d 590, 597 (7th Cir. 2020).

**Undisputed Material Facts**

1.  Plaintiffs are 18 years of age both now and at the time they attempted to apply for FOID cards.  See Ex. A, page. 1, para. 2.

2.  That Defendant will not accept a FOID Card application from an 18 to 20 year old without a parental or guardian affidavit on the form.  See Ex. A, Page 2, para. 5, 6, Page. 7.

3.  That Plaintiffs attempted to file an application for a FOID card for each of them, but the online computer application form would not proceed without the parental affidavit. Ex. A, p. 1, Para. 4.

4.  That in order to lawfully possess firearms under Illinois law Plaintiff are required to possess valid Firearm Owners Identification Cards. See Ex A, p. 1, para. 3, Ex. B.

5.  That Plaintiffs' parents are both physically able to sign the FOID affidavit, but they both refuse to do so. Ex. A, p. 2, Para 12.

6.  The reason that Plaintiffs' parents refuse to sign the affidavit is that said parents believe that Plaintiffs, as adults, should not have to get parental of other persons permission to apply for and to legally possess firearms. Ex. A, p. 2, para. 11.

7.  That neither of Plaintiffs' parents object to them having FOID cards. Ex. A, p. 2, para. 8.

8.  That Plaintiffs' father is a coach on their trap team, a former Chief of Police, and wants Plaintiffs to be able to lawfully defense themselves, including with the use of firearms. Ex. A, p. 2, paras 13, 14.

9.  That neither Plaintiffs have ever been arrested, or placed in any mental health facility, or use unlawful drugs. Ex. A, p. 3, para. 16.

### APPLICABLE LAW

Plaintiffs feel they are obliged to first themselves cite to *Horsley v Trame,* 808 F.3d 1126 (7th Cir. 2015), a case that would be directly on point, but for the fact that the last eleven years have not aged the case well. In fact, the case itself was stillborn and must be disregarded as being wrongly decided on the date it was published by even a cursory reading of *Bruen* or the Supreme Court's most recent decision on the Second Amendment, *U.S. v. Hemani*, No. 24–1234.

June 18, 2026.

Plaintiffs make reference to it only out of their duty of candor.  In sum, *Horsely* uses a Supreme Court debunked balancing test, and found that 18 years olds can actually get FOID card through a discretionary appeal process that it likely nobody has *ever* actually gotten a FOID card from[5].

*Horsely* itself is quite similar to this case.  Both deal with 18 year olds and the same general law and facts.  But a few things stand out in *Horsely*

As an initial matter, it is expected that Defendant will content that 18, 19 and 20 years olds do not have Second Amendment rights.  This is simply untrue.

**The Discretionary Licensing Regime For 18 to 20 Year Olds is Unconstitutional**

First, the word "may" used over and over and over again in the *Horsley* opinion.  The exact quote citing Illinois law is:

> "The Director may grant relief to a person who lacks a parent or guardian signature if the applicant establishes to the Director's satisfaction that the applicant has not been convicted of a forcible felony within a certain number of years, the applicant will not be likely to act in a manner dangerous to public safety, and granting relief would not be contrary to the public interest or to federal law."

*Horseley,* at 1128.

In plain English that means that Defendant "may deny" the application, under its own discretionary standards.

---

[5] Prior to filing this case, counsel for Plaintiff submitted one or more Freedom of Information Act requests to the ISP trying to determine if *anyone ever* tried to use this process.  No documents showing use of any such procedure were produced.  While these documents did not expressly state that no such FOID card had ever been issued, a fair reading of these documents would certainly suggest that conclusion.  Presumably, if any such FOID card has ever been issued, Defendant will so indicate.

And what do we know about "may issue" firearms licensing regimes?  The U.S. Supreme Court declared them unconstitutional in *Bruen*,

> "The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U.S. at 780, 130 S.Ct. 3020 (plurality opinion). We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need.
>
> …
>
> New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."

*New York State Rifle & Pistol Assn, Inc. v. Bruen*, 142 S.Ct. 2111, 2138 (2022).

Those under 21 fall straight into that category.  They *either* need to convince a parent, who legally has no authority over them any longer, or a former legal guardian, who again has no legal authority over them, to approve the adults' possession of firearms via the FOID card, or, barring same, must prove that they "will not be likely to act in a manner dangerous to public safety and granting relief would not be contrary to the public interest" something no typical 21 or 22 year old must do.  Finally, if a 18, 19 or 20 year old wishes to appeal, under Illinois Administrative Procedure Law, 735 ILCS 5/3-110

> The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct.

This was and is essentially the same as the New York statute in *Bruen*, our Supreme Court found unconstitutional.  *New York v Bruen*, 142 S.Ct. 2111, 2123 (2022).

**18 Year Olds Have Second Amendment Rights**

Be all the above as it may.  "Ultimately, the text of the Second Amendment includes eighteen-to-twenty-year-old individuals among "the people" whose right to keep and bear arms is protected."  *Reese v. BUREAU OF ALCOHOL, TOBACCO, FIREARMS*, 127 F. 4th 583, 600 (5th Circuit 2025).  *Horsely* <u>did not</u> find that 18 to 21 years old were not so protected.  ("We need not decide today whether 18–, 19–, and 20–year–olds are within the scope of the Second Amendment.").  In fact, it is logical that 18 year olds have Second Amendment rights.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *District of Columbia v. Heller* and *McDonald v. City of Chicago,* the Supreme Court held that the Amendment, in conjunction with the Fourteenth, "protect[s] an individual right to keep and bear arms for self-defense." *Bruen,* 597 U.S. at 17, 142 S. Ct. at 2125; *Heller,* 554 U.S. 570, 628, 128 S. Ct. 2783, 2817, 171 L.Ed.2d 637 (2008); *McDonald,* 561 U.S. 742, 767-68, 130 S. Ct. 3020, 3036, 177 L.Ed.2d 894 (2010). Subsequently, *Bruen* clarified the framework for determining when a given statute or regulation unconstitutionally infringes on that right. *Bruen,* 597 U.S. at 24, 142 S. Ct. at 2129-30. First, courts must determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.* If so, "the Constitution presumptively protects that conduct," and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

In the unamended Constitution and Bill of Rights, the phrase "right of the people" appears in the First Amendment's Assembly-and-Petition Clause, the Fourth Amendment's

Search-and-Seizure Clause, and the Ninth Amendment. *Heller,* 554 U.S. at 579, 128 S. Ct. at 2790. All of these references confer "individual rights" and undoubtedly protect eighteen-to-twenty-year-olds as much as twenty-one-year-olds. In fact, with modifications, the rights they confer extend to younger minors. *See, e.g., Erznoznik v. City of Jacksonville,* 422 U.S. 205, 212, 95 S. Ct. 2268, 2274, 45 L.Ed.2d 125 (1975) ("[M]inors are entitled to a significant measure of First Amendment protection."); *New Jersey v. T.L.O.,* 469 U.S. 325, 337, 105 S. Ct. 733, 740, 83 L.Ed.2d 720 (1985) (school-age children are protected by the Fourth Amendment, with greater permissible intrusions in the school context).

Elsewhere in the Constitution, "the people" refers to all Americans collectively. *See* U.S. CONST. pmbl.; *id.* art. I, § 2; *id.* amend. X. But as *Heller* explained, these provisions "deal with the exercise or reservation of powers, not rights. Nowhere else in the Constitution does `a right' attributed to `the people' refer to anything other than an individual right." 554 U.S. at 579-80, 128 S. Ct. at 2790. From another angle, "in all six other provisions of the Constitution that mention `the people', the term unambiguously refers to all members of the political community, not an unspecified subset." *Id.* at 580, 128 S. Ct. at 2790-91. In sum, "the people" is a term of art that refers to a "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* (quoting *United States v. Verdugo-Urquidez,* 494 U.S. 259, 265, 110 S. Ct. 1056, 1061, 108 L.Ed.2d 222 (1990). On examining the constitutional text, *Heller* "start[ed] therefore with a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581, 128 S. Ct. at 2791.

To say that "the people" covered by the Second Amendment is limited to those who were a part of the "political community" *at the founding* would imply excluding "law-abiding, adult citizens" based on property ownership, race, or gender. *See Bruen,* 597 U.S. at 31-32, 142 S. Ct. at 2134 ("It is undisputed that petitioners... —two ordinary, law-abiding, adult citizens—are part of `the people' whom the Second Amendment protects.") (citing *Heller,* 554 U.S. at 580, 128 S. Ct. 593*593 at 2790). Just as defining "arms" as "only those arms in existence in the 18th century" "border[s] on the frivolous," likewise, attempting to limit "the people" to individuals who were part of the "political community" at ratification is ludicrous. *See Heller,* 554 U.S. at 582, 128 S. Ct. at 2791. "Although its meaning is fixed according to the understandings of those who ratified it, the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." *Bruen,* 597 U.S. at 28, 142 S. Ct. at 2132.

In sum, Plaintiffs adopt the entirety of the *Reese* cases logic on this point. Thus, the first standard of *Bruen* is met.

**The Historical Tradition Does Not Justify the Regulation**

Because the "Second Amendment's plain text covers [the] conduct" at issue, "the Constitution presumptively protects [the] conduct." *Bruen*, 597 U.S. at 24, 142 S. Ct. at 2129–30. According to Bruen, the next question is whether restricting eighteen-to-twenty-year-olds from acquiring a FOID card license enabling them to possess or acquire a firearm is "consistent with this Nation's historical tradition of firearm regulation." Id. at 17, 142 S. Ct. at 2126. The government bears the burden of proof. Id. The Supreme Court reiterated in *Rahimi* that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." 602 U.S. at 692, 144 S. Ct. at 1898 (citing *Bruen*, 597 U.S. at 26–31, 142 S. Ct. at 2131–34).

Courts must "ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit." Id. (quoting *Bruen*, 597 U.S. at 19.  Central to this analogical inquiry are "[w]hy and how the regulation burdens the right," *Rahimi*, 602 U.S. at 692, 144 S. Ct. at 1898 (emphasis added), or, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified . . . ." *Bruen*, 597 U.S. at 29, 142 S. Ct. at 2133. For "[e]ven when a law regulates arms-bearing for a permissible reason, . . . it may not be compatible with the right if it does so to an extent beyond what was done at the founding." *Rahimi*, 602 U.S. at 692, 144 S. Ct. at 1898.

As recently noted by the U.S. Supreme Court in *U.S. v. Hemani*, No. 24–1234, (June 18, 2026), "[t]he burden the government sets for itself in this case is a considerable one. As the government construes §922(g)(3)and seeks to apply it here, the law automatically bans an individual from possessing a gun from the moment he be-comes an unlawful user of any controlled substance until he ceases being one."

Here, all 18 to 20 year olds are automatically banned from possessing arms, unless they convince their parents, their former legal guardian, or some government bureaucrat, that it is OK for the 18 to 20 year old to have such a firearm.  As noted in *Hemani*,

> "The historical laws the government identifies usually
> provided some form of process before an individual lost any
> of his liberties, even temporarily."

*U.S. v Hemani*, No. 24-1234.

## APPLICATION OF LAW TO FACTS

Here, summary judgment is warranted, as there are no genuine issues of material fact in dispute, and Plaintiffs are entitled to judgment as a matter of law.  Specifically, Plaintiffs are 18

years old, applied for FOID cards, did not have parental affidavits, might be able to convince Defendant to issue FOID cards on a "may issue" basis, but may issue is unconstitutional, 18 year olds have Second Amendment rights, and there is no historical analogue that justifies the regulation.

If this Court enters a summary judgment, then the request for a preliminary injunction is moot. If this Court denies a summary judgment, Plaintiffs are entitled to a preliminary injunction as the evidence shows that:

     (1)  Plaintiffs are in fact likely to succeed on the merits,

     (2) That Plaintiffs by virtue of having their constitutional rights violated are likely to suffer irreparable harm in the absence of preliminary relief,

     (3) that the balance of equities tips in Plaintiff favor, and

     (4) that an injunction is in the public interest."

*See Winter*, 555 U.S. at 20, 129 S.Ct. 365.

In this case, if somehow a factor is not sufficiently proven for summary judgment, it still shows, at least, the *likelihood* of success on the merits, and the remaining requirements apply.

### CONCLUSION

Here, there is no pre-denial form of process for 18 to 20 year olds; instead, there is a *presumption* of denial for 18 to 20 year olds to possess firearms in Illinois. Certainly, the parents of 18 to 20 year olds who are themselves permitted to own firearms under Illinois law, *can*, if they so choose to, in their own discretion, whatever that standardless discretion entails, vouch for the 18 to 20 year olds, again *if* the parent also agrees to indemnify the 18 to 20 year old. This requirement never existed at the time of the Revolution.

Assuming the Defendant will argue that the Plaintiff can appeal, again, they appeal into a "may issue" regime, which is itself prohibited under *Bruen*, and at that, Plaintiffs would have to prove "that granting relief would not be contrary to the public interest", again, rejected in *Bruen.*

To this end, under either the Standards of Summary Judgment, or the standards of a preliminary injunction, at a minimum, it is clear that the parental affidavit requirement for the FOID card is, at least, *likely* unconstitutional,

To that end, this Court should  (preferably) enter summary judgment in Plaintiffs' favor, and order Defendant to accept and process Plaintiffs' FOID card applications, without any kind of parental affidavit, processing said applications the same as for a 21 year old, or alternatively, enter a preliminary injunction that orders the same thing, until further order of this Court.[6]

Dated: 6-22-2026                                           Respectfully Submitted,

                                                           By: s/Thomas G. Maag
                                                           Thomas G. Maag
                                                           Maag Law Firm, LLC
                                                           22 West Lorena Avenue
                                                           Wood River, IL  62095

                                                           618-216-5291
                                                           maaglawoffice@gmai.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed using electronic filing, which will send notification to all registered users.

Dated:  6-22-2026                                          s/Thomas G. Maag

---

[6] This being a 42 USC 1983 action, Plaintiff are entitled to attorney fees and costs if they win. For the record, Plaintiffs request these costs and fees, and request leave to file a fee and cost petition at the appropriate time in this case.  Plaintiffs mention this at this time, as Defendant has, in prior litigation, argued that the failure to do so constituted wavier of any request for costs and fees.